**AVERY DENNISON CORPORATION, Plaintiff–Appellant,**

v.

**FLEXCON COMPANY, INC., Defendant–Appellee.**

No. 00–1549.

United States Court of Appeals, Federal Circuit.

July 18, 2001.

Before PAULINE NEWMAN, LOURIE, and GAJARSA, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

Avery Dennison appeals the grant of summary judgment of the United States District Court for the Northern District of Illinois,[1] entering judgment of noninfringement of United States Patents No. 4,713,-273 (issued Dec. 15, 1987), 4,946,532 (issued Aug. 7, 1990), and 5,372,669 (issued Dec. 13, 1994) in favor of FLEXcon. As the district court's claim construction was correct, and non-infringement under this claim construction was stipulated, the judgment is *affirmed*.

## BACKGROUND

The Avery patents are directed to a facestock used for adhesive labels, tapes or signs. The claimed facestock is a multilayer coextrudate of a core layer, and at least one skin layer suitable for receiving printing. Claim 19 of the '273 patent is representative:

> 19. A multilayer facestock for use in pressure-sensitive label, tape or sign applications comprising *a coextrudate of cojoined layers* comprising a relatively thick core or base layer of polymeric film material of a stiffness of between 10 and 100 Gurley and which contributes the majority of the dimensional stability and stiffness of labels or signs cut or formed from the facestock, and at least one relatively thin skin layer, said skin layer being on the face side of the coextrudate and having an ink-printable surface, and a pressure-sensitive adhesive layer combined at the side of said coextrudate opposite said face side.

(Emphasis added). The patent specifications, which are substantially identical, state that the facestock is "formed by si-

---

1. *Avery Dennison Corp. v. FLEXcon Co.*, No. 96–C–4820 (N.D.Ill. July 27, 2000).

multaneous extrusion" such that the layers of the facestock "are firmly adhered to each other in a permanently combined state to provide a unitary coextrudate." '273 patent, col. 2, II. 57–63.

Before filing suit against FLEXcon, Avery asserted the same patents and claims against UCB Films. UCB Films manufactures a facestock film having the brand name "Rayoface" in England, and sells it to entities in the United States, including FLEXcon, who laminate an adhesive layer and removable liner to the UCB Films facestock and resell it. Because the same products and patents are involved in the *UCB Films* and the *FLEXcon* cases, the district court herein adopted the claim construction in the *UCB Films* case, *Avery Dennison Corp. v. UCB Films, et al.*, No. 95–C–6351 (N.D. Ill. June 8, 2000).

The critical section of the *UCB Films* claim construction focuses on the "coextrudate" limitation, as follows:

> [T]he court concludes that claims 19–21 of the '273 patent should be plainly construed to cover a coextrudate which is a facestock, or plastic film, formed by simultaneous or joint extrusion of several materials through a die. The immediate result of this simultaneous extrusion, or coextrusion, is a multilayer film wherein the layers are firmly adhered to one another in a permanently combined state, i.e., the patented coextrudate.

The district court ruled that:

> A facestock formed by adhering preformed layers is not within the scope of claims 19–21 of the '273 patent. Further, in claim 19, the coextruded product must have (1) a thick core or base layer (within a stiffness of between 10 and 100 Gurley); (2) at least one thin ink-printa-

ble skin layer on the face side of the product; and (3) a pressure-sensitive adhesive layer on the side opposite the face side.

The district court in *UCB Films* held that this construction also applied to the '532 and '669 process patents. Avery stipulated that it could not prove infringement by FLEXcon under the claim construction of the *UCB Films* case.

■ Avery's position is that the court erred in ruling that "A facestock formed by adhering preformed layers is not within the scope of [the claims]." That is the issue before this court.

## DISCUSSION

It is not disputed that the Rayoface product is made by laminating two sheets of multilayer, coextruded film. Avery states that the UCB Films' lamination is an additional step in a process from which facestock is made by blown coextrusion and thus does not preclude infringement of the claims. Avery further states that the district court's requirement that the facestock be the "sole" and "immediate" result of coextrusion is an incorrect restriction of the claims' scope.

Claim interpretation is a matter of law that is reviewed *de novo. Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1174 (Fed.Cir. 1998) (en banc). Each of the asserted claims requires that the facestock either be a "coextrudate of cojoined layers" or be manufactured by "coextruding . . . to thereby form . . . a multilayer extrudate." Avery's proposed construction would have the claims read on any product used as facestock if it contains any coextruded layers, as opposed to products wherein the facestock itself is a coextrudate.

The district court's construction, that the facestock is the "immediate result of this simultaneous extrusion, or coextrusion," recognizes the specification's teaching that the facestock layers are "formed by simultaneous extrusion from a suitable known type of coextrusion die, and are adhered to each other in a permanently combined state to provide a unitary coextrudate." '273 patent, col. 9, II. 23–26. Figure 8 of the '273 patent further illustrates the Avery process, wherein plastic components D, E, and F, are coextruded through die 70 to form a coextruded facestock with joined layers 54, 52, and 56:

**FIG.8**

█ The district court's claim construction is also required by the prosecution history of the patents in suit. The patentee, in response to a restriction requirement for the parent application, explained that the claimed coextrudate is distinguished from a material "formed by adhering preformed layers," stating that "if the layers were preformed they would not have been coextruded and would not constitute a coextrudate as called for in independent product claims." These statements, and the undisputed fact that the UCB Films coextruded product does not literally infringe the Avery claims before it is laminated to form a facestock, negate Avery's argument that the UCB Films lamination is merely an extra step in the formation of an infringing product, and also bar access to the doctrine of equivalents to reach the laminated product. We have carefully considered all of the arguments and authorities presented by Avery, and conclude that the district court's judgment is correct.

No costs.